## In re LUXOR CAB MFG. CORPORATION OF AMERICA.

### Ex parte FISK TIRE CO., Inc., et al.

Circuit Court of Appeals, Second Circuit.
April 9, 1928.

No. 215.

1. **Bankruptcy ☞463—Record on appeal should have been purged of irrelevant matter before remitted to appellate court.**

Record on appeal from order dismissing involuntary petition in bankruptcy, consisting almost entirely of colloquy of counsel incorporated in bulk, held, to put too great a burden on appellate court to disentangle the relevant juridical matter, and should have been purged by master of irrelevant discourse, argument, and comment before being remitted to court.

2. **Bankruptcy ☞81(4)—Bankruptcy petition against corporation, on theory other corporations in receivership were same corporation, held properly dismissed, in absence of allegation that corporation possessed assets not covered by receivership.**

Where petition for adjudication of Delaware corporation as bankrupt alleged its insolvency and that receivers were put in charge of its assets in equity suit against two other corporations of same name, one of New York and the other of Massachusetts, on the ground that they were same corporation under other names, held, that, in absence of allegations that Delaware corporation had assets not covered by the receivership decrees, petition was properly dismissed.

3. **Bankruptcy ☞60—Wrongful taking of corporation's property by receivers of separate corporations would not constitute "act of bankruptcy," because lien not timely discharged (Bankr. Act, § 3a[4], as amended by Act May 27, 1926, 11 USCA § 21[a] 4).**

If Massachusetts, New York, and Delaware corporations having same name were separate and distinct corporations, receivers of Massachusetts and New York corporations had no warrant for seizing any property belonging to Delaware corporation, and such seizure did not, because lien was not discharged within 30 days, constitute an "act of bankruptcy," within Bankruptcy Act, § 3a (4), as amended by Act May 27, 1926 (11 USCA § 21 [a] 4), making it an act of bankruptcy for an insolvent to permit creditor to obtain through legal proceedings any levy, attachment, judgment, or other lien without having it vacated or discharged within 30 days in view of subdivisions 2 and 3 (11 USCA § 21[a] 2, 3); phrase "other lien" being ejusdem generis.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Act of Bankruptcy.]

Appeal from the District Court of the United States for the Southern District of New York.

Bankruptcy proceeding by the Fisk Tire Company, Inc., and others, against the Luxor Cab Manufacturing Corporation of America. From an order dismissing the petition, petitioning creditors appeal. Affirmed.

The petition for adjudication filed February 7, 1927, was twice amended, and in its third form, after alleging that the petitioners were creditors and that the respondent was insolvent, set up as an act of bankruptcy that on October 18, 1926, a receiver was "put in charge" of its assets in a suit in equity against two corporations of the same name, one of New York, the other of Massachusetts. The reason for treating the respondent as a defendant in that suit was asserted to be that it owned all the shares and property of the New York and Massachusetts corporations, and conducted their businesses, and that they "were actually and in fact the alleged bankrupt herein under other names." The petition also set up as a second act of bankruptcy that certain of the respondent's creditors had procured a lien on its property.

The situation disclosed at the hearing chiefly by offers of proof of the petitioners (for there was little actual evidence) was that the respondent was a Delaware corporation, one of several organized to operate a single business in New York; the others being a New York corporation and a Massachusetts, the first being the appellee in the appeal decided herewith under title In re Luxor Cab Manufacturing Corporation, Ex parte Masterman Printing Company, Inc., 25 F.(2d) 644. As appears by a reference to that case, the District Court for the Southern District of New York appointed receivers for that company in an "equity receivership" or creditors' sequestration bill, on June 29, 1926, and made them "permanent" on August 3. On October 18, 1926, the Massachusetts corporation was added as a new defendant in that suit, and the receivership "extended" to its assets, though apparently few if any of these were within the jurisdiction of the court.

The petitioners' thesis was that, since the corporations were in fact all one, the corporate forms being adopted as a mere fetch to cover various dishonest practices, the "extension" of the receivership on October 18, 1926, to the assets of the Massachusetts corporation was an appointment of receivers of the respondent, which within four months they might lay as an act of bankruptcy. They asserted that in addition it established a lien upon the goods of the respondent, which had not been discharged within thirty days.

The special master to whom the issues were referred thought that the corporate en-

tities must as matter of law be treated as distinct, and therefore refused to allow any proof of their unity. He thereupon recommended the dismissal of the petition, and the judge confirmed his report.

Remington & Meek, of New York City (Harold Remington and Stanley Y. Denlinger, both of New York City, of counsel, and Basil H. Pollitt, of Newark, N. J., on the brief), for appellants petitioning creditors.

Katz & Sommerich, of New York City (Maxwell C. Katz and Otto C. Sommerich, both of New York City, of counsel), for petitioners appellants.

Samuel H. Kaufman and Santangelo & Lukas, all of New York City (Leo Oppenheimer and Milton P. Kupfer, both of New York City, of counsel), for appellee.

Hugo I. Epstein, of New York City, for receivers.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). [1] The record set up is in such form that we cannot forbear some comment upon it. It consists almost entirely of colloquy of counsel incorporated in bulk, out of which we are asked to disentangle the relevant juridical matter as best we can. The result is to confuse every one and dissipate the issues in a vague atmosphere of talk. We are at much difficulty to learn just what took place before the master, whose report merely finds that the three corporations were separate, while the very crux of the appellants' position is that they were prevented from showing that they were identical, an extremely difficult issue at best, on which the plaintiff should be allowed the widest latitude. Just what the appellants offered to prove, whether that offer was in such form as to be cognizable by a court, or whether they were prevented from any proof by a ruling at the outset; all this is left for us to pick out amid a mass of argument, comment, and irrelevant discourse, of which the master should have purged the record before remitting it to the court. More judicial initiative must be shown, unless the combination of stenographer and cheap printing is wholly to submerge us in a flood of verbiage. It is only by the mere chance that the final position of the appellants, as set up in their last petition, is untenable, that we are able to dispose of the case without discharging a duty which is not the function of an appellate court.

[2] Turning therefore to the pleading, it appears that the New York and Massachusetts corporations were mere names for the respondent, which owned all their property and controlled both their businesses. On this theory the decree of October 18, which put the property of the Massachusetts corporation into the custody of the receivers, also assumed possession of the assets of the respondent. However, on the same theory the decree of June 29 had already put its assets into the custody of the same receivers, when it appointed them receivers of the New York corporation. To succeed, the petitioners must aver that there were some assets covered by the decree of October 18 which that of June 29 did not reach. This might indeed be true, if the New York and Massachusetts corporations had a separate identity, but the petitioners do not, and indeed cannot, so assert. To do so would involve the paradox that, though the New York corporation and the respondent were identical, and so too the Massachusetts corporation and the respondent, the New York and Massachusetts corporations were separate persons.

Now each decree either went no further than it professed to go, and assumed possession of no more than those assets which were separately the property of the defendant named, or it took over the assets of the respondent under one of its aliases. But in that case the first decree took over all the assets, for the first alias was as good as the second and left nothing for the second decree to affect. Thus the decree of October 18 was merely a futile gesture, effected nothing, and could not be an act of bankruptcy.

[3] The second act of bankruptcy is even more plainly untenable. If the corporations were several, the receivers had no warrant for seizing any of the respondent's property, and they are responsible like any one else. Though the appellants may have to get judgment and secure their own receiver, they have their relief, but it will be against the receivers as tort-feasors and because of their conversion. Section 3 (a) (4), as amended by the act of 1926 (11 USCA § 21[a] 4), was not intended to make such wrongs acts of bankruptcy; like subdivisions 2 and 3 (11 USCA § 21[a] 2, 3), it was aimed at inequality of distribution among creditors, and the phrase "other lien" is to be read ejusdem generis. The receivers may indeed have the status of creditors, when seeking to assert a debt from the respondent to their corporations, but the appellants assert, not that they have justified their possession on any such theory, but that they acted under a wrongful claim of title. Nobody can seriously maintain that an insolvent commits an act of bankruptcy when a third person converts his

goods, and he does not recover possession within thirty days. Possibly the circumstances may have been such as to lead to the inference that the respondent had acquiesced in the conversion and that it was a mutual transaction, in effect a fraudulent transfer. That might indeed have been available as an act of bankruptcy, had it been alleged, but it was not, and it is too late now to amend. In re Fuller & McGee, 15 F.(2d) 294 (C. C. A. 2).

Order affirmed.